1          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
2                      AT CHARLESTON

3  _____

UNITED STATES OF AMERICA,
4                                  Criminal Action Number:
           Plaintiff,
5                                  2:14-00114
              -vs-
6                                  Date:  July 14, 2014
RONALD BARNETTE,
7
           Defendant.
8  _____

9      TRANSCRIPT OF PLEA HEARING
      BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
10     UNITED STATES DISTRICT COURT

11  A P P E A R A N C E S:
12  _____

For the Government:     AUSA MEREDITH GEORGE THOMAS
13                      U.S. Attorney's Office
                        P.O. Box 1713
14                      Charleston, WV  25326-1713

15

For the Defendant:      MICHAEL B. HISSAM, ESQUIRE
16                      BAILEY GLASSER LLP
                        209 Capitol Street
17                      Charleston, WV  25301

18  Probation Officer:      Joshua Smith-Shimer

19

Also Present:           Keith Bowie, IRS Special Agent
20
                        Sherry Payette, FBI Special Agent
21

22

23  Court Reporter:         Carol Farrell, CRR, RMR, CCP, RSA

24  Proceedings recorded by mechanical stenography; transcript
    produced by computer.
25

1          PROCEEDINGS had before The Honorable Thomas E.

2    Johnston, Judge, United States District Court, Southern

3    District of West Virginia, in Charleston, West Virginia, on

4    July 14, 2014, at 3:00 p.m., as follows:

5          THE DEPUTY CLERK:  The matter before the Court is

6    United States versus Ronald Barnette, Criminal Action Number

7    2:14-cr-00114, scheduled for a plea hearing.

8          THE COURT:  Good afternoon.  Will counsel please

9    enter their appearances.

10          MS. THOMAS:  Meredith George Thomas on behalf of the

11   United States.

12          MR. HISSAM:  Mike Hissam on behalf of the defendant,

13   Ronald Barnette, who is present with me in the courtroom.

14          THE COURT:  Good afternoon.  Mr. Barnette, I am now

15   going to ask the Deputy Clerk to administer an oath to you.

16          THE DEPUTY CLERK:  Please raise your right hand.

17   (**RONALD BARNETTE,** HAVING BEEN DULY SWORN, TESTIFIED AS

18   FOLLOWS:)

19          THE DEFENDANT:  Yes.

20          THE COURT:  You may be seated.

21          Mr. Barnette, do you understand that you are now

22   under oath and you must tell the truth and, if you testify

23   falsely, you may face prosecution for perjury or for making a

24   false statement?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Throughout the course of this hearing,

2    I'm going to be asking you a number of questions, and I want

3    to make sure that you and I are communicating clearly, so if

4    at any point you don't understand a question that I ask or

5    anything else that occurs in this hearing, I want you to feel

6    free to speak up and seek clarification.

7          Also, if at any time you need to confer with your

8    attorney, I will be pleased to pause the proceedings to allow

9    you to do so.  Do you understand all that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  I want to begin by asking

12    you, how old are you?

13          THE DEFENDANT:  53.

14          THE COURT:  And can you briefly describe your

15    educational background?

16          THE DEFENDANT:  Quit in 12th grade.

17          THE COURT:  And can you read and write and understand

18    the English language?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Can you briefly describe your work

21    experience?

22          THE DEFENDANT:  Operate MRS, Mining Repair

23    Specialists.  We run --

24          THE COURT:  I'm sorry.  You're going to have to

25    repeat what you just said.

1        THE DEFENDANT:  I'm a business owner, Mining Repair

2  Specialists.

3        THE COURT:  I didn't catch that either.

4        THE DEFENDANT:  Mining Repair Specialists.

5        THE COURT:  All right.

6        THE DEFENDANT:  And Holy Smoke Coal.

7        MR. HISSAM:  That's Holy Smoke Coal.

8        THE COURT:  I need you to speak a little bit more

9  clearly.

10        And was there something else?

11        THE DEFENDANT:  A theater.

12        THE COURT:  Okay.  All right.

13        THE DEFENDANT:  That's about it.

14        THE COURT:  All right.  And have you taken any

15  medicine or drugs or consumed any alcoholic beverages in the

16  last 24 hours?

17        THE DEFENDANT:  No, Your Honor.

18        THE COURT:  Including prescription drugs?

19        THE DEFENDANT:  No, Your Honor.

20        THE COURT:  Have you ever been treated for any mental

21  illness or addiction to drugs?

22        THE DEFENDANT:  No, Your Honor.

23        THE COURT:  Do you know where you are and why you're

24  here today?

25        THE DEFENDANT:  Yes, sir.

1         THE COURT:  Do you have any hearing impairment or

2    other disability which would prevent you from fully

3    participating in this hearing today?

4         THE DEFENDANT:  No, Your Honor.

5         THE COURT:  Mr. Hissam, do you have any reason to

6    question the competency of your client?

7         MR. HISSAM:  No, sir.

8         THE COURT:  All right.  I believe the original plea

9    agreement has been provided to me.  Is this the same as the

10   copy that was provided in advance?

11        MS. THOMAS:  Your Honor, there has been one change,

12   on Page 2 of Exhibit B, which is the second page of the

13   stipulation of facts, two words have been marked out, and it's

14   all been initialed by the parties.

15        THE COURT:  Okay.  Very well.

16        All right.  Turning to the plea agreement then,

17   Mr. Barnette, is that your signature which appears on the

18   ninth and final page of the plea agreement?

19        THE DEFENDANT:  Yes, sir.

20        THE COURT:  And are those your initials that appear

21   on the other pages of the plea agreement?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  And have you read and reviewed with your

24   counsel each of the 17 paragraphs of the plea agreement and

25   the two exhibits attached to the plea agreement?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  And do you wish to have the various terms

3  of the plea agreement orally stated on the record or do you

4  believe that that's unnecessary?

5    THE DEFENDANT:  It's unnecessary.

6    THE COURT:  And do you understand and agree with all

7  of the terms and provisions contained in the plea agreement?

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  And, Mr. Hissam, have you reviewed each

10  of the 17 paragraphs of the plea agreement and its exhibits

11  with your client?

12    MR. HISSAM:  Yes, Your Honor.

13    THE COURT:  And, Mr. Hissam and Ms. Thomas, is there

14  any reason why either of you believe that the various terms of

15  the plea agreement should be orally stated on the record?

16    MS. THOMAS:  No, Your Honor.

17    MR. HISSAM:  No, Your Honor.

18    THE COURT:  All right.  Nonetheless, Mr. Barnette,

19  there are some provisions of the plea agreement I want to go

20  over with you, starting with Section 5, which begins on Page 2

21  and runs over onto Page 4, and it's entitled "Forfeiture."

22  And in that section, you agree not to contest an

23  administrative forfeiture of $400,000.  Is that your

24  understanding?

25    THE DEFENDANT:  Yes, sir.

 1          THE COURT:  And Subsection G of Section 5 -- first of

 2     all, let me ask you this:  Do you understand a waiver is a

 3     legal term that means you're giving something up?

 4          THE DEFENDANT:  Yes, sir.

 5          THE COURT:  All right.  So then in Subsection G of

 6     Section 5, do you understand that you are waiving any defenses

 7     that you may have to any forfeiture action in this case?

 8          THE DEFENDANT:  Yes, sir.

 9          THE COURT:  All right.  Next I want to refer you to

10     Section 10 of the plea agreement which is entitled

11     "Termination of Prosecution," and this provides that,

12     essentially, that Diana Barnette will not be prosecuted as a

13     result of this plea agreement if it goes forward.

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  All right.  Next I want to refer you to

16     Section 11 of the plea agreement, which appears on Page 5 and

17     is entitled, "Stipulation of Facts and Waiver of Federal Rule

18     of Evidence 410."  Now, this section relates to a couple of

19     different matters, the first of which is the stipulation of

20     facts, which is attached to the plea agreement as Exhibit B,

21     and I want to turn your attention to that document now.  That

22     is a two-page document, and on the second page, is that your

23     signature which appears there?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And have you read the stipulation of

1  facts?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And do you agree that all the facts

4  contained in the stipulation are true?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  A little bit about what will

7  be happening from here on out.  I will be asking the probation

8  officer to prepare a presentence investigation report.  That

9  report will contain detailed, recommended factual findings

10  regarding this offense and your background, among other

11  things.  Ultimately, at sentencing, I will make factual

12  findings based, at least in part, on the recommendations

13  contained in the presentence report.

14          Now, you've reached an agreement with the government

15  regarding certain facts contained in this stipulation, but I

16  want you to understand that in this process, neither the

17  probation officer nor this Court are bound by that stipulation

18  of facts.  Do you understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And do you further understand that if I

21  make findings of fact at sentencing that are different from or

22  inconsistent with the facts contained in this stipulation, you

23  will still be bound by your guilty plea and would have no

24  right to withdraw it?  Do you understand that?

25          THE DEFENDANT:  Yes, sir.

1       THE COURT:  All right.  The other matter addressed in

2   Section 11 of the plea agreement is a waiver of Federal Rule

3   of Evidence 410.  Now, Rule 410 generally provides an

4   information or documents regarding plea negotiations, and the

5   stipulation of fact would fall into that category.

6       Those things are generally not admissible at trial,

7   in other words, the government can't use that sort of thing

8   against you at trial, usually.  However, under this waiver, if

9   you withdraw from the plea agreement or if it's no longer any

10  good, the plea agreement is no longer any good because you

11  violated one or more of its terms, and there is a subsequent

12  trial, that under this waiver, the government would be allowed

13  to present stipulation of fact in its case in chief or for

14  other purposes at that trial.  Do you understand that waiver?

15      THE DEFENDANT:  Yes, sir.

16      THE COURT:  All right.  Next I want to refer you to

17  Section 12 of the plea agreement which starts on Page 5 and

18  runs over onto Page 6.  It's entitled, "Agreement on

19  Sentencing Guidelines."  And before we get into it, I want to

20  ask you, has your attorney talked with you about the Federal

21  Sentencing Guidelines and how they generally work?

22      THE DEFENDANT:  Yes, sir.

23      THE COURT:  And has he showed you that chart in the

24  back of the book?

25      THE DEFENDANT:  Yes, sir.

1          THE COURT:  All right.  Well, working from that

2    chart, I'm going to have a similar discussion with you.  If

3    you will recall from the chart, on the left side of the page

4    there is a series of numbers that run from low to high as you

5    go down the page.  Those are offense levels.  And the offense

6    level is calculated by starting out with a base offense level,

7    which is a starting point, and that can be adjusted upward or

8    downward, depending on the facts and circumstances of the

9    case.  Then you generally arrive at an adjusted offense level.

10   Then consideration is usually given to a reduction for

11   acceptance of responsibility.  Has your attorney talked with

12   you about that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And then you generally after that arrive

15   at a total offense level.

16          Then you go up to the top of the chart and there are

17   six criminal history categories, and you would fall under one

18   of those, depending on the number of points, if any, assigned

19   to any prior convictions that you may have.

20          Then you combine the criminal history category with

21   the total offense level and arrive at a point in the chart

22   that gives a range of months of imprisonment, and -- well, do

23   you understand all this about the guidelines I've told you so

24   far?

25          THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  All right.  Once we arrive at that

2   guideline range -- and, by the way, there are certain parts of

3   the chart where certain ranges would fall within a part of the

4   chart where there would be alternatives to incarceration.

5        Once we arrive at that range, then I have the

6   authority to sentence you within that range or, under some

7   circumstances, I would have the authority to sentence you

8   outside of that range, either above it or below it.  If I do

9   that, based on the factors identified in the guidelines

10  themselves, it's generally known as a departure.  If I

11  sentence you outside of the guideline range, again, above it

12  or below it, based on factors outside of the guidelines, it's

13  generally known as a variance.  Do you understand everything

14  I've told you about the guidelines?

15       THE DEFENDANT:  Yes, Your Honor.

16       THE COURT:  Has your attorney gone over all these

17  things with you as well?

18       THE DEFENDANT:  Yes, Your Honor.

19       THE COURT:  All right.  With all that in mind then,

20  Section 12 contains an agreement that you reached with the

21  government regarding one or more provisions of the Federal

22  Sentencing Guidelines.  Now, this is similar to the

23  stipulation of fact in that the probation officer will include

24  in the presentence report a recommended guideline calculation.

25  Ultimately, at sentencing, I'll make guideline findings based,

1  at least in part, on the probation officer's recommendation.

2        Now, you and the government have reached an agreement

3  with regard to certain provisions of the guidelines here, but

4  I want you to understand once again that in this process,

5  neither the probation officer nor this Court are bound by that

6  agreement on the guidelines.  Do you understand that?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  Do you further understand that if I make

9  guideline findings at sentencing that are different from or

10  inconsistent with the -- with this agreement, you will still

11  be bound by your guilty plea and would have no right to

12  withdraw it?  Do you understand that?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  All right.  Next I want to refer you to

15  Section 13 of the plea agreement which appears on Page 6 and

16  is entitled "Waiver of Appeal and Collateral Attack."  Now,

17  this section relates to a couple of different procedures that

18  I want to describe to you briefly.

19        An appeal is a procedure by which a party to a case

20  before a District Court like this one and a defendant in a

21  criminal case, it's often a defendant, goes to the Court of

22  Appeals, which is the next level up of the court system, and

23  argues that certain errors or mistakes may have taken place in

24  their case before the District Court.

25        A collateral attack is similar but is a separate

 1  civil case that may be filed after a criminal case is over,

 2  sometimes referred to as a habeas corpus petition, and in the

 3  collateral attack, the defendant may also argue that certain

 4  errors or mistakes may have taken place in the defendant's

 5  criminal case before the District Court.

 6          Now, do you understand those two proceedings, at

 7  least as I've briefly described them to you?

 8          THE DEFENDANT:  Yes, sir.

 9          THE COURT:  The other thing I want to go over with

10  you is that there are two phases to a criminal case.

11          The first phase is the phase in which guilt or

12  innocence is determined, sometimes by a trial, much more often

13  by guilty plea like what we're doing today.  That phase of the

14  case begins -- starts at the very beginning of the case and

15  runs all the way to the point where a finding of guilt is made

16  or innocence is made.

17          If a finding of guilt is made, then we go to the

18  second part or second phase of the criminal case in which the

19  penalty is determined, which ultimately concludes in a

20  sentencing hearing at the end of the case.

21          Now, do you understand the two phases of a criminal

22  case as I briefly described them?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  With all that in mind then, I

25  want to go over -- this first paragraph in Section 13 contains

1  an appeal waiver.  I want to go over that with you now.

2          Do you understand that you waive the right to appeal

3  your conviction and any sentence of imprisonment, fine or term

4  of supervised release or the manner in which the sentence was

5  determined on any ground whatsoever with one exception:  You

6  may appeal any sentence that is greater than the maximum

7  penalty set forth by statute; do you understand that waiver?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Anything about it that you don't

10 understand or you have questions about?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  All right.  And the second paragraph, do

13 you also understand that you may not file a later civil

14 proceeding, sometimes referred to as a collateral attack or a

15 habeas corpus position, challenging your plea, conviction, or

16 sentence?  Do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Finally, do you understand that you are

19 in no event waiving your right to claim ineffective assistance

20 of counsel either on appeal or by collateral attack?

21         Do you want me to go over that one again?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  All right.  Do you understand that you

24 are in no event waiving your right to claim ineffective

25 assistance of counsel, either on appeal or by collateral

1  attack?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Do you understand that now?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  Finally, I want to turn your

6  attention to Section 14 on Page 7.  It's entitled "Waiver of

7  FOIA and Privacy Right."  This waiver means you can't go back

8  after this case is over and seek documents or other

9  information about this case from the government, even with a

10  Freedom of Information request.  Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And I've neglected one thing.  In the

13  final copy of the stipulation of fact, on Page 2, there is a

14  handwritten change.  And do you agree with that change?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Are those your initials next to that

17  change?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  In handwriting.

20          All right.  Very well.  Mr. Hissam, have you

21  thoroughly reviewed the plea agreement with your client?

22          MR. HISSAM:  Yes, Your Honor.

23          THE COURT:  And do you believe that he fully

24  understands the various terms and provisions of the plea

25  agreement, including the waivers and other matters that I have

1  gone over with him this afternoon?

2          MR. HISSAM:  Yes, Your Honor.

3          THE COURT:  Mr. Barnette, have you reviewed the

4  agreement in detail with your attorney?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And do you believe that you've had

7  adequate time to discuss your case fully with your attorney?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Has your attorney answered any questions

10  that you have about your case?

11          THE DEFENDANT:  What?

12          THE COURT:  Has your attorney answered any questions

13  that you've had about your case?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Mr. Hissam, during your representation of

16  the defendant, has he been cooperative?

17          MR. HISSAM:  Yes, Your Honor.

18          THE COURT:  Mr. Barnette, has anything further been

19  agreed to, either orally or in writing, that is not contained

20  in the plea agreement?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  All right.  I'll order that the plea

23  agreement be filed.  I will find that the defendant

24  understands and agrees to the terms contained in the plea

25  agreement.  I will defer accepting or rejecting the plea

1  agreement until sentencing, after the presentence report has

2  been received and considered.

3       Mr. Barnette, have you received and read and reviewed

4  with your attorney the information or charging document that

5  has been proposed in this case?

6       THE DEFENDANT:  Yes, sir.

7       THE COURT:  And do you understand the charges

8  contained in the information?

9       THE DEFENDANT:  Yes, sir.

10      THE COURT:  Would you like me to read the information

11 to you or will you waive the reading of the information?

12      THE DEFENDANT:  I'll waive the right.

13      THE COURT:  All right.  As I understand it, you're

14 pleading guilty to a single-count information which charges

15 you with making a false statement in violation of 18 U.S.C. §

16 1001(a)(2).  I now want to go over that charge and that

17 statute in just a little bit more detail with you.

18      Section 1001(a)(2) provides, in pertinent part, that

19 "whoever, in any matter within the jurisdiction of the

20 executive, legislative or judicial branch of the Government of

21 the United States knowingly and willfully makes any materially

22 false, fictitious, or fraudulent statement or representation

23 shall be fined under this title, imprisoned not more than five

24 years or both."

25      Now, in order to establish that charge against you,

1 the government would have to prove each of the following

2 elements, each beyond a reasonable doubt:  And they are,

3 first, that you made a false statement in a matter involving a

4 governmental agency; and, second, that you acted knowingly and

5 willfully; and, third, that the false statement was material

6 to a matter within the jurisdiction of the agency.

7          Now, I want to share with you some definitions that

8 apply to what I just told you.

9          Criminal investigations conducted by the IRS are

10 matters within the jurisdiction of a branch of the United

11 States Government for purposes of Section 1001.

12          And an act is done knowingly if done voluntarily and

13 intentionally, not because of mistake or accident or other

14 innocent reason.

15          For purposes of this statute, an act is done

16 willfully if it is done deliberately and not by accident.

17          A false statement may take the form of an affirmative

18 misrepresentation or the concealment of a material fact.  In

19 determining whether a statement is material, it is irrelevant

20 whether the false statement actually influenced or affected

21 the decision-making process of the agency or fact-finding

22 body.  Rather, a statement is material if it has a natural

23 tendency to influence or is capable of influencing the

24 decision-making body to which it was addressed.

25          Are there any objections to the elements as I have

1  described them?

2       MS. THOMAS:  Your Honor, after the last hearing, I

3  was reminded of a couple of recent cases regarding the

4  willfulness standard, and I apologize for bringing it up now

5  and not during the last hearing, but I would like to bring it

6  to the Court's attention, if I may.

7       THE COURT:  Okay.

8       MS. THOMAS:  Recently, I believe it was on March the

9  10th, the Solicitor General filed two oppositions for

10 petitions of certiorari in two cases, one involved a First

11 Circuit case and one involved a Ninth Circuit case, regarding

12 the term "willfully," in a 1001 context or a false statement

13 context.  The department argued in that opposition to petition

14 that "willfully" requires proof that the defendant knew his

15 conduct was unlawful, rather than the deliberately with

16 knowledge standard.  I wanted to bring that to the Court's

17 attention.

18      THE COURT:  The government argued for the heightened

19 standard?

20      MS. THOMAS:  Yes.  The government looked the *Bryan*

21 standard which is a 1998 case that is put forth in

22 924(a)(1)(D), I believe that's what the Court was

23 interpreting, an act was undertaken with a bad purpose which

24 requires the government to prove the defendant acted with

25 knowledge that his conduct was unlawful.

1        I would suggest that in either case, the one that is

2   before the Court right now and in the last case, the

3   government would be able to prove both standards beyond a

4   reasonable doubt, but I did want to bring this to the Court's

5   attention.

6        THE COURT:  Well, this might be just the opportunity

7   I was looking for to clarify this.  I'm not so sure I agree

8   with the government in those cases.  I think that "knowingly"

9   and "willfully" in the context of 1001 are basically

10  interchangeable.  Apparently, that's not the position of the

11  government, at least that the government's taken in those two

12  cases you've indicated.

13        I mean, if you all want to submit something on that,

14  I'm happy to -- this may be just the opportunity I'm looking

15  for to sort of do my restatement, for what it's worth, on the

16  issue.  This is something I'll be looking at sort of as we

17  move toward sentencing.  I don't doubt that probably there is

18  a basis here, but I think it's important to have the law

19  clarified.  So I really think that's -- that's what I'm

20  thinking about doing is writing an opinion where I go through

21  all this and sort of figure out where I fall out on this whole

22  mess because if you really start looking at the definition of

23  "willfully," the Courts have done a pretty lousy job with it.

24  In fact, I would argue that both Congress and the Courts have

25  pretty well abused the word "willfully" almost out of

1  existence.  So you're welcome to file something on it if you'd

2  like.

3          MS. THOMAS:  When would the Court like something on

4  that?

5          THE COURT:  I mean, I don't think I've set this for

6  sentencing until sometime in October, so 1st of September?

7          MS. THOMAS:  All right.  I'll file it in both cases,

8  if that's all right, since we'll be dealing with the law in

9  both cases.

10          THE COURT:  Yeah, those are the only two of these, of

11  this set of cases, that involve 1001, right?

12          MS. THOMAS:  That's correct.

13          THE COURT:  And I think we would all agree that on

14  tax-evasion cases, that the heightened standard would apply,

15  and I believe that's how I instructed the defendant --

16  defendants in those cases.

17          MS. THOMAS:  And that's correct.  And we are not

18  seeking the standard to be that the defendant needs to know

19  the specific provision of the law as you would --

20          THE COURT:  Well, unfortunately, there is some

21  language in some of these cases that might hint at that, but I

22  think that's ridiculous.  To expect a defendant to know the

23  law, chapter and verse, is silly.  So, but I think they --

24  where Congress -- this is the way the Courts have treated it.

25  I'm not sure this is what Congress intended.  I'm not sure

1  what Congress intended actually.

2        But with regard to tax cases, the approach I have

3  taken is that, at least a general matter, is the defendant had

4  to have some sense that the defendant was doing something that

5  either the law specifically forbid or was failing to do

6  something that the law required, not chapter and verse, but

7  simply know, for example, that filing a false tax return is

8  unlawful, is forbidden by the law.  I think my take on this

9  has always been that in that very narrow category of mostly

10  tax and I guess structuring -- it also applies to structuring,

11  that you have -- basically, you have exception to the notion

12  that ignorance of the law is not an excuse.  In those cases,

13  there has to be some knowledge of the law and some

14  understanding of the law to be able to violate it.

15        In every other case, this is my perspective, up until

16  now, where the word "willfully" is used, it is

17  indistinguishable from the word "knowingly" or

18  "intentionally."  That's -- that's the approach that I've

19  taken.  Because that standard, the knowingly standard, is that

20  the defendant simply had to know what he or she was doing.

21  Absolutely no need to know it was unlawful, but simply know

22  that they were doing something that, as it turns out, was

23  forbidden by the law.  But they didn't have to know anything

24  about the law in order to be guilty of it.  That's a pretty

25  standard notion of what "knowingly" is, and, generally, in my

1   view, at least up until now, applies in most federal criminal

2   cases.

3          MS. THOMAS:  I think the distinction that the United

4   States is putting forth in these cases is that the defendant

5   had to act with a bad purpose to disobey the law.  And I

6   realize it might become academic at some point, but we -- I

7   will certainly provide briefing to the Court by September the

8   1st.

9          THE COURT:  Well, I would welcome that, and I think

10  that this is the occasion that I'm going to have to, you know,

11  make a call on this and let everybody kind of know where I'm

12  coming from on this troublesome term.

13          Judge King authored an opinion, I think the name of

14  the case is *Bursey*, where he talks about having a -- what's

15  the language? -- the defendant had to have -- he's wrestling

16  with a statute which I believe in that case forbid a person

17  from being -- and I'm paraphrasing this -- in the presence of

18  a security perimeter unlawfully.  And where he came out on

19  that one was -- and that one was phrased kind of similarly to

20  this statute.  And where he came out on that one was that the

21  defendant had to have some knowledge of the general unlawful

22  nature of his activity.  I have no idea what that means.  It

23  seems to me you either know it's against the law or you don't.

24  If you do know it's against the law, then the tax version of

25  "willfully" would apply, and if you don't know it's against

1  the law, then we're at "knowingly."  I really don't know

2  where you would come -- I don't know where you'd come out with

3  a hybrid of that.

4        And I understand that some courts have recognized

5  that there is like three levels of willfully.  That middle

6  level doesn't make a bit of sense to me.  Either you knew what

7  you were doing was unlawful or you didn't or, more accurately,

8  you had to know it was unlawful or you didn't, and I don't see

9  how you can sort of know it's generally unlawful, but without

10 slipping into a requirement that you have to know what the law

11 is.  That doesn't make any sense to me.  But just because it

12 doesn't make any sense to me doesn't mean it's not right.  It

13 just means I'm not smart enough to figure it out.  So that's a

14 possibility, too.  But this is a summary of a much longer --

15 several much longer discussions I've had among my law clerks

16 which rather rapidly become very academic and very theoretical

17 and, unfortunately, not very useful when it comes to the

18 application of law to facts in real-world cases.  So that's a

19 long-winded way of saying I look forward to your submission.

20       And, Mr. Hissam, if you would like to weigh in on

21 this, you can.  If your client -- you and your client don't

22 want to weigh in on this or participate in the discussion, you

23 don't have to.  But I think it would be useful for me to

24 clarify my perspective on it, given my history of being a sort

25 of a stickler on factual-basis issues and wanting to make sure

 1  that all those I's are dotted and T's are crossed.

 2       So, now, the question is if I come to the conclusion

 3  that the definition of "willfully" is something other than

 4  what I recited today, do you have any objection to us simply

 5  revisiting that issue briefly at sentencing?

 6       MS. THOMAS:  We would not have an objection.

 7       MR. HISSAM:  Not from the defendant, Your Honor.

 8       THE COURT:  All right.  Well, then I will -- you want

 9  to set two weeks after Ms. Thomas's submission as a deadline

10  to submit something?

11       MR. HISSAM:  Yes, Your Honor.  At this point, this is

12  new to us.  I wasn't aware of the department's position in

13  these cert oppositions.  But we certainly would plan to take a

14  look at it and, if necessary, file something with the Court.

15       THE COURT:  All right.  Well, I will leave it up to

16  you.  Neither one of you has to file anything, but I'll give

17  you until then to file something, and then I'll probably write

18  something on this and try to -- try to at least put it to rest

19  in my mind, and in a way that -- the one thing I would strive

20  for is greater clarity than what exists in the law right now.

21  Whether or not I get it right will have to be reserved for

22  another day.  Probably what I'll have to do after that is when

23  I -- at one of these plea hearings, I'll reference my opinion

24  in these cases and say this is my perspective on "willfully"

25  and that will guide me in terms of plea hearings, factual

1    bases, and jury instructions from here on out.  And everybody

2    will at least know where I'm coming from on it, and there will

3    be something in writing that if someone wants to take it up,

4    I'll be more than happy to have them do that.

5            All right.  Let's move on.

6            Mr. Barnette, I now want to go over with you the

7    maximum and any minimum sentences you may face as a result of

8    your plea, and that is a maximum term of imprisonment of five

9    years, a maximum fine of $250,000 or twice the gross pecuniary

10   gain or loss resulting from your conduct, whichever is

11   greater, a maximum term of supervised release of three years.

12   A mandatory special assessment of $100 would be required.

13   Restitution could be ordered if it were found to be

14   applicable.

15           Next I want to return to our discussion of the

16   Federal Sentencing Guidelines.  They are advisory, meaning

17   they are not mandatory and don't have to be followed, but they

18   will, nevertheless, play an important role in your case from

19   here on out.

20           This Court will consider the factors set forth in 18

21   U.S.C. § 3553(a), including the advisory guidelines, in

22   determining the appropriate sentence in your case.  And now I

23   want to ask you some questions that will help me to understand

24   your understanding of the advisory guidelines.

25           Have you discussed with your attorney the various

1  factors which apply in determining what the sentence in your

2  case may be under the advisory guidelines?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And do you understand that on the

5  single-count information, you cannot in any event receive a

6  greater sentence than the statutory maximum that I explained

7  to you earlier?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Do you understand the Court will not

10  determine the sentence for your case until a later date when a

11  presentence report has been completed and both you and the

12  government have had an opportunity to challenge the facts and

13  analysis reported by the probation officer?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Do you understand that under a concept

16  known as relevant conduct, this Court, in determining the

17  total offense level for sentencing purposes under the

18  guidelines, may take into account any conduct, circumstances

19  or injuries relevant to the crime of which you may be

20  convicted?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Do you understand that after the Court

23  has determined what advisory guidelines apply to your case,

24  the Court has the authority to vary or depart from the

25  advisory guidelines and impose a sentence that is more severe

1 or less severe than the sentence called for by the guidelines?

2         THE DEFENDANT: Yes, Your Honor.

3         THE COURT: Do you understand that in determining

4 your sentence, the Court is obligated to calculate the

5 applicable sentencing guideline range and to consider that

6 range, possible departures under the guidelines, and other

7 sentencing factors under 18 U.S.C. § 3553(a)?

8         THE DEFENDANT: Yes, Your Honor.

9         THE COURT: Do you understand that parole has been

10 abolished, and if you are sentenced to prison, you will not be

11 released on parole?

12         THE DEFENDANT: Yes, Your Honor.

13         THE COURT: Do you understand if the Court accepts

14 your plea of guilty and the sentence ultimately imposed upon

15 you is more severe than you had hoped for or expected, you

16 will still be bound by your guilty plea and would have no

17 right to withdraw it?

18         THE DEFENDANT: Yes, Your Honor.

19         THE COURT: Do you understand if you plead guilty to

20 the single-count information which charges you with a felony,

21 you may lose important civil rights such as the right to vote,

22 the right to serve on a jury, the right to hold public office,

23 and the right to own or possess a firearm?

24         THE DEFENDANT: Yes, Your Honor.

25         THE COURT: Now, Mr. Barnette, you have the right to

1　have this matter presented to a federal grand jury.  I will

2　explain that process to you briefly.  A grand jury is composed

3　of at least 16 and not more than 23 persons, and at least 12

4　grand jurors must find that there is probable cause to believe

5　that you committed the crime with which you are charged before

6　you may be indicted.

7　　　　　Now, do you see any benefit to having this case

8　presented to a federal grand jury?

9　　　　　THE DEFENDANT:  No, Your Honor.

10　　　　　THE COURT:  Do you see any prejudice or disadvantage

11　to you of not having the case presented to a grand jury?

12　　　　　THE DEFENDANT:  No, Your Honor.

13　　　　　THE COURT:  All right.  Counsel has been provided

14　with a waiver-of-indictment form, and I want to go over that

15　with you now.  It's contains what we call the style of the

16　case, *United States of America versus Ronald Barnette*, the

17　criminal action number, it's entitled "Waiver of Indictment,"

18　and it states as follows:  "I, Ronald Barnette, am accused of

19　violating 18 U.S.C. § 1001(a)(2).  I have been advised of the

20　nature of the charge, of the proposed information, and of my

21　rights.  I hereby waive in open court prosecution by

22　indictment and consent that the proceeding may be by

23　information rather than by indictment."

24　　　　　There is a space for you to sign and date, a space

25　for your counsel to sign, and a space for me to sign.  Now, do

1  you understand what I just read to you?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And is there anything about it that you

4  don't -- about the waiver-of-indictment process that you don't

5  understand or you have questions about?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  All right.  If you're ready to do so

8  then, I'll ask that you execute the waiver-of-indictment form

9  by signing and dating it, then I'll ask your counsel to sign

10  it and tender it to the Court.

11          MR. HISSAM:  May I approach, Your Honor?

12          THE COURT:  You may.

13          All right.  I will note for the record that the

14  defendant has signed and dated the waiver-of-indictment form,

15  it has been witnessed by his counsel and I'll order -- and I'm

16  now signing it, and I will order that it be made part of the

17  record for this proceeding.

18          Next, Mr. Barnette, I want to talk with you regarding

19  your trial and constitutional rights.  You have the right to

20  continue -- I'm sorry.  You have the right to plead not guilty

21  and maintain a not-guilty plea throughout these proceedings,

22  including at trial.  You have the right to be represented by

23  counsel.  You have the right to a speedy and public trial by a

24  jury composed of citizens of this district.  You have the

25  right to confront and have your attorney cross-examine

1  witnesses and have your attorney move to suppress any evidence

2  he believes was illegally or unconstitutionally obtained.  You

3  have the right not to testify or otherwise incriminate

4  yourself and your exercise of this right cannot be held

5  against you.  Do you understand these rights so far?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  You have the right to have the government

8  come in here and prove its case beyond a reasonable doubt.

9  The jury's verdict would have to be unanimous.  You have the

10  right to present evidence on your own behalf.  You have the

11  right to testify on your own behalf at trial.  And you have

12  the right to subpoena witnesses to testify for you.  Do you

13  understand all of these rights?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Any of them that you don't understand or

16  you have questions about?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  Other than your right to counsel, do you

19  understand that you will be giving up all these rights by

20  entering a plea of guilty?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Do you understand that once you've

23  entered a plea of guilty, there is not going to be a trial, no

24  jury verdict, and no findings of innocence or guilt based on

25  disputed evidence presented to me or to the jury?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you believe that you fully understand

3    the consequences of entering a plea of guilty?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And, Mr. Hissam, having reviewed this

6    case and the plea agreement in detail with your client, do you

7    believe that he fully understands his rights and fully

8    understands the consequences of entering a plea of guilty?

9          MR. HISSAM:  Yes, Your Honor.

10         THE COURT:  All right.  I note that there is a

11   stipulation of facts.  Do the parties have any objection to

12   the Court utilizing that in its consideration of the factual

13   basis?

14         MS. THOMAS:  No, Your Honor.

15         MR. HISSAM:  No, Your Honor.

16         THE COURT:  All right.  Very well.  The Court will so

17   proceed.

18         I do intend to defer a factual-basis finding until

19   sentencing.

20         Mr. Barnette, will you please stand.

21         As to the charge contained in the single-count

22   information, how do you plead, sir?  Guilty or not guilty?

23         THE DEFENDANT:  Guilty.

24         THE COURT:  You may be seated.

25         Your counsel has been provided with a written

1  plea-of-guilty form.  I would ask that you go over that with

2  him if necessary, sign and date it, and then I will ask him to

3  sign it and tender it to the Court.

4          MR. HISSAM:  May I approach, Your Honor?

5          THE COURT:  You may.

6          All right.  I will note for the record that the

7  defendant has signed and dated the written plea-of-guilty form

8  and it has been witnessed by his counsel, and I will order

9  that it be made a part of the record for this proceeding.

10          Mr. Barnette, is this plea the result of any threat

11  or coercion or harassment of you by anyone?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Is it the result of any promise or

14  inducement other than is contained in the plea agreement?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Are you pleading guilty to protect

17  anyone?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  Are you acting voluntarily and of your

20  own free will in entering this guilty plea?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Has anyone promised or predicted the

23  exact sentence which will be imposed upon you in this matter?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Do you understand no one could know at

1  this time the exact sentence which will be imposed?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Has your attorney adequately represented

4  you in this matter?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Has your attorney left anything unknown

7  which you think should have been known?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Have you or your attorney found any

10 defense to the charge contained in the information?

11          (Conversation held off the record between defense

12 counsel and the defendant.)

13          THE DEFENDANT:  No, sir.

14          THE COURT:  All right.  Just to be sure, have you all

15 found any defense to the charge contained in this information?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  All right.  Are you, in fact, guilty of

18 the crime charged in the information, in other words, did you

19 do it?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.  I will find that the

22 defendant is competent and capable of entering an informed

23 plea, that the plea is freely and voluntarily made, that the

24 defendant understands the nature of the charges and is aware

25 of the consequences of the plea.  I will find that the

1  defendant understands his rights and understands that he's

2  giving up these rights by entering a plea of guilty.

3        I will defer a factual-basis finding, I will accept

4  the plea of guilty, and I will defer adjudging the defendant

5  guilty until the time of sentencing.

6        I will ask the probation officer to prepare a

7  presentence investigation report.  Mr. Barnette, it is

8  important that you cooperate fully with the probation officer

9  in the preparation of the presentence report.  If you fail to

10  cooperate fully and truthfully with the probation officer, you

11  may be subject to an enhancement of your sentence and the

12  forfeiture of certain sentence reductions for which you might

13  otherwise be eligible.

14        It's also important that you not commit any

15  additional crimes between now and sentencing as there may be

16  additional punishments imposed for committing additional

17  crimes.

18        I'm going to set this matter for sentencing on

19  October 20th, 2014, at 3 p.m.  I will put my other

20  presentencing dates in my post-plea order.

21        Ms. Thomas, what's the government's position with

22  regard to bond?

23        MS. THOMAS:  No opposition for the defendant to be on

24  bond.

25        THE COURT:  All right.  Hearing no objection, I will

1  place the defendant on $10,000 unsecured bond under the

2  standard conditions, as well as those recommended in the

3  Pretrial Services report.

4          I've signed my part of the paperwork already.

5  Mr. Hissam, you and your client just need to take care of the

6  rest of it with the Courtroom Deputy at the conclusion of the

7  hearing.

8          MR. HISSAM:  Your Honor, if I could address one

9  modification to the standard bond condition.  For

10 Mr. Barnette's businesses, he has occasion to travel to the

11 Western District of Virginia and the Eastern District of

12 Kentucky, and we would ask the Court's permission that he be

13 allowed to travel to those two districts in addition to the

14 Southern District.

15          THE COURT:  Is there any objection?

16          MS. THOMAS:  No objection.

17          THE COURT:  All right.  I will allow that.  I suppose

18 we're going to have to modify the paperwork.  It might just

19 take a couple minutes.  But probation has no problem with

20 that, either?

21          THE PROBATION OFFICER:  No, Your Honor.

22          THE COURT:  Okay.  Very well.  So we'll go ahead and

23 take care of that paperwork. Anything else we need to take

24 care of today?

25          MS. THOMAS:  No, Your Honor.

1          MR. HISSAM:  No, Your Honor.

2          THE COURT:  All right.  Thank you.

3          THE LAW CLERK:  All rise.

4          THE COURT:  Ms. Thomas -- let's go back on the record

5     real quick.

6          Ms. Thomas, I will ask you to notify Mr. Gillooly

7     with regard to the deadlines we talked about.

8          MS. THOMAS:  I will.

9          THE COURT:  All right.  Thank you.

10          THE LAW CLERK:  This Court is adjourned.

11          (The proceedings concluded at 3:50 p.m.)

12                    *   *   *   *   *   *

13                 **REPORTER'S CERTIFICATE**

14

15          I, **Carol Farrell, CRR, RMR, CCP, RPR,** Official Court

16     Reporter of the United States District Court for the Southern

17     District of West Virginia, do hereby certify that the

18     foregoing proceedings are a true and accurate transcript of

19     the testimony as taken stenographically by and before me at

20     the time, place, and on the date hereinbefore set forth.

21          I further certify that I am neither related to any of the

22     parties by blood or marriage, nor do I have any interest in

23     the outcome of the above matter.

24

25     **/S/ Carol Farrell, CRR, RMR, CCP, RPR**