2014 WL 1571932 (U.S.) (Appellate Petition, Motion and Filing)
Supreme Court of the United States.

Rodney L. RUSSELL, Petitioner,
v.
UNITED STATES OF AMERICA.

No. 13-7357.
March 10, 2014.

On Petition for a Writ of Certiorari to the United States Court of Appeals for the First Circuit

**Brief for the United States in Opposition**

Donald B. Verrilli, Jr., Solicitor General, Counsel of Record.

Mythili Raman, Acting Assistant Attorney General.

Robert A. Parker, Attorney, Department of Justice, Washington, D.C. 20530-0001, SupremeCtBriefsBusdoj.gov, (202) 514-2217.

**\*I  QUESTION PRESENTED**

Whether 18 U.S.C. 1035, which prohibits "knowingly and willfully" making a materially false statement in a matter involving a health care benefit program, requires proof that the defendant was aware that his conduct was unlawful.

**\*1  OPINION BELOW**

The opinion of the court of appeals (Pet. App. A2-A38) is reported at 728 F.3d 23.

**JURISDICTION**

The judgment of the court of appeals was entered on August 26, 2013. The petition for a writ of certiorari was filed on November 11, 2013. The jurisdiction of this Court is invoked under 28 U.S.C. 1254 (1).

**STATEMENT**

Following a jury trial in the United States District Court for the District of Maine, petitioner was convicted of four **\*2** counts of making false statements in a matter involving a health care benefit program, in violation of 18 U.S.C. 1035. Pet. App. A7, All. He was sentenced to five months of imprisonment, to be followed by three years of supervised release. 3/9/12 Judgment 2-3. The court of appeals affirmed. Pet. App. A1-A38.

1. In 2003, the Maine legislature created the Dirigo Health Agency to provide health insurance for the state's low-income residents. Pet. App. A3. Among other things, the agency runs a program known as Dirigo Choice, which subsidizes health insurance premiums for Maine residents whose income is less than 300 percent of the federal poverty level. *Id.* at A3-A4. To obtain a subsidy, a resident must complete an application and provide supporting documentation, including income tax returns and proof of income. *Id.* at A4.

In 2006, petitioner lost his job as a stockbroker and financial advisor. Pet. App. A4. To replace his employer-provided health insurance, petitioner applied for and received subsidized insurance coverage through Dirigo Choice. *Ibid.* Petitioner renewed this subsidy in 2007, 2008, and 2009. *Id.* at A5-A6. Each time, he filed a renewal application stating that he was unemployed and that he had not earned any wages, salary, or tips. *Ibid.* [1] He also signed verification clauses providing **\*3** that "[a]ll statements and answers I have given are true and complete" and that "I understand it's a crime to knowingly provide false, incomplete, or misleading information on this form." *Id.* at A5. Relying on the information that petitioner provided, Dirigo Choice approved his renewal applications in 2007, 2008, and 2009, awarding him total subsidies of more than $15,000. *Id.* at A5-A6.

[1] In a 2009, petitioner confirmed in an email to a Dirigo Choice eligibility specialist that he had "not received unemployment benefits or any other kind of income since spring 2007." Pet. App. A6.

In fact, petitioner had been working for his high school friend Malcolm French throughout the period covered by the renewal applications. Pet. App. A6. French owned several businesses, including a contracting service. *Id.* at A7. French's employees and suppliers testified at trial that they had seen petitioner working for French on numerous occasions during the relevant period. *Id.* at A8-A9. The evidence also showed that French had paid petitioner in cash, that petitioner had deposited $30,000 in cash into his bank accounts while he was purportedly unemployed, and that petitioner had used cash to pay hundreds of dollars in expenses each month. *Id.* at A9-10. Finally, when petitioner applied for another job in 2010, his resume and job application stated that between 2007 and 2009 he had been employed as the treasurer of French's contracting business. *Id.* at A10.

**\*4** 2. A federal grand jury indicted petitioner on six counts of making false statements in a matter involving a health care benefit program, in violation of 18 U.S.C. 1035. Pet. App. A7. Section 1035 makes it a crime to "knowingly and willfully" make a false statement "in connection with the delivery of or payment for health care benefits." Consistent with First Circuit precedent interpreting the identical language of 18 U.S.C. 1001's prohibition on making false statements in matters within federal jurisdiction, the district court instructed the jury that a "false statement is made knowingly and willfully if [petitioner] knew it was false or demonstrated a reckless disregard for the truth with a conscious purpose to avoid learning the truth." Pet. App. A13-A14; see *United States v. Gonsalves,* 435 F.3d 64, 72 (1st Cir. 2006). [2] The jury acquitted petitioner on two counts and convicted on the remaining four. Pet. App. All. [3] The district court sentenced petitioner to four **\*5** concurrent terms of five months of imprisonment, to be followed by four concurrent terms of three years of supervised release. 3/9/12 Judgment 2-3.

[2] The district court also instructed the jury that it was required to find that petitioner made the false statement "voluntarily and intentionally," which the court defined to mean that he "did not make the statement by accident or mistake." Pet. App. A14.

[3] The jury acquitted on the counts based on the statements in petitioner's 2007 renewal application and in his 2009 email exchange with an eligibility specialist at Dirigo Choice. Pet. App. A7, All. It convicted on the counts based on his 2008 renewal application, the certification accompanying the 2008 renewal application, the 2009 renewal application, and the certification accompanying the 2009 renewal application. *Ibid.*

3. The court of appeals affirmed. Pet. App. A1-A38. As relevant here, the court rejected petitioner's argument that the district court should have instructed the jury that Section 1035's "willfully" element required the government "not only [to] prove that [petitioner's] statements were false and that he knew they were false, but that he also knew that making those false statements was illegal." *Id.* at A15. Following the only prior appellate decision that had considered this question, the Ninth Circuit's decision in *United States v. Ajoku,* 718 F.3d 882, petition for cert, pending, No. 13-7264 (filed Nov. 5, 2013), the court held that the terms "knowingly and willfully" in Section 1035 should be interpreted in the same manner as Section 1001's prohibition on "knowingly and willfully" making false statements in a matter within federal jurisdiction. Pet. App. A15-A17. And consistent with *Ajoku* and First Circuit precedent interpreting Section 1001, the court held that in this context the term "willfully" "does not necessarily require knowledge of illegality." *Id.* at A18; see *Gonsalves,* 435 F.3d at 72.

## *6 ARGUMENT

Petitioner contends (Pet. 4-17) that Section 1035's "willfully" element requires proof that the defendant knew that his false statement was unlawful. The government took a different position in the courts below, relying on First Circuit precedent interpreting the identical language in Section 1001. Upon further consideration, however, the government now agrees that the correct interpretation of "willfully" in Section 1035 is the one articulated in *Bryan v. United States,* 524 U.S. 184 (1998). To find that a defendant "willfully" made a false statement in violation of Section 1035, a jury must conclude "that he acted with knowledge that his conduct was unlawful." *Id.* at 193. The same interpretation should apply to 18 U.S.C. 1001's materially identical prohibition on "knowingly and willfully" making a false statement in a matter within the jurisdiction of the federal government.

The court of appeals' contrary conclusion in this case does not squarely conflict with any appellate decision interpreting Section 1035. The courts of appeals are divided, however, on the interpretation of "willfully" in the context of Section 1001. Accordingly, this Court's review of the question presented may ultimately be warranted in an appropriate case. But review would be premature at this point because no court of appeals has had the opportunity to consider the issue in light *7 of the government's current view. Moreover, further review is unwarranted in this case because any error in the district court's instructions was harmless: it is clear that petitioner knew he was acting unlawfully by misrepresenting his income in his applications for health insurance subsidies because he signed certifications acknowledging that it was "a crime to knowingly provide false, incomplete, or misleading information." Pet. App. A5. The petition should therefore be denied. [4]

---

[4] The question presented in this case is also presented in *Ajoku v. United States,* petition for cert, pending, No. 13-7264 (filed Nov. 5, 2013). The government is filing its brief in opposition in *Ajoku* concurrently with this brief and is providing a copy of this brief to counsel for the petitioner in *Ajoku*. A third pending petition raises a different question about the degree of mens rea required by Section 1035: whether the government must prove that the defendant acted with specific intent to deceive. See *Natale v. United States,* petition for cert. pending, No. 13-744 (filed Dec. 20, 2013). The government's response in *Natale* is due on March 24, 2014.

1. The court of appeals correctly concluded that "willfully" should be given the same meaning in Section 1001 and Section 1035. Upon further consideration, however, the government has concluded that the "willfully" element of these provisions requires proof that the defendant knew his conduct was unlawful.

a. As the court of appeals observed, Section 1035 is a close cousin of Section 1001. Pet. App. A16-A17. Section 1001 applies to statements made "in any matter within the [federal *8 government's] jurisdiction," and Section 1035 applies to statements made "in connection with the delivery of or payment for" health care benefits or services "in any matter involving a health care benefit program." Both statutes use essentially identical language to prohibit "knowingly and willfully" making false statements. Compare 18 U.S.C. 1001, with 18 U.S.C. 1035. Indeed, the text of Section 1035 appears to have been drawn from Section 1001. [5] Accordingly, the court of appeals correctly concluded that "knowingly and willfully" should be given the same meaning in both statutes. Cf. *Pasquantino v. United States,* 544 U.S. 349, 355 n.2 (2005) (collecting cases adopting consistent interpretations of "identical language in the wire and mail fraud statutes").

---

[5] Section 1035 was enacted in 1996 and its relevant text is essentially identical to the version of Section 1001 that was then in effect. See Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, § 244, 110 Stat. 2017; see also 18 U.S.C. 1001 (1994). The legislative history of Section 1035 confirms that the statute was drafted against the backdrop of Section 1001. See H.R. Conf. Rep. No. 736, 104th Cong., 2d Sess. 257 (1996).

b. This Court has never addressed the proper interpretation of "willfully" in Sections 1001 and 1035. See *Brogan v. United States,* 522 U.S. 398, 416 (1998) (Ginsburg, J., concurring in judgment) (noting that the meaning of the term in the context of Section 1001 is an open question). In general, however, the Court has held that when the word "willfully" is *9 used "in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' " *Bryan,* 524 U.S. at 191. "In other words, in order

to establish a 'willful' violation of a [criminal] statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.' " *Id.* at 191-192 (quoting *Ratzlaf v. United States,* 510 U.S. 135, 137 (1994)).[6] To carry this burden, the government need not show that the defendant knew about the specific provision he is charged with violating or prove that he "disregard[ed] *** a known legal obligation." *Id.* at 198-199. It is sufficient if the defendant was aware that the charged conduct was, in a general sense, in violation of the law. See *id.* at 189-191, 193-196.[7]

---

[6]   See also, *e.g.*, *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 n.9 (2007); *Screws v. United States,* 325 U.S. 91, 101 (1945) (plurality opinion); *United States v. Murdock,* 290 U.S. 389, 394 (1933); *Potter v. United States,* 155 U.S. 438, 446 (1894); *Felton v. United States,* 96 U.S. 699, 702 (1877).

[7]   The Court has adopted a more stringent interpretation of "willfully" in the context of some tax statutes, holding that "the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating." *Bryan,* 524 U.S. at 194; see also *Ratzlaf,* 510 U.S. at 138 (adopting a similar rule in the context of a prohibition on structuring currency transactions). But the Court has applied this more demanding construction only in the context of "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan,* 524 U.S. at 194-195. That heightened showing to establish that a defendant acted "willfully" has no application to the nontechnical prohibitions on false statements in Sections 1001 and 1035. See *id.* at 194-196.

**\*10** Although First Circuit precedent supported the position the government took below, the government now agrees that the general criminal-law interpretation of "willfully" articulated in *Bryan* should govern in the context of Sections 1001 and 1035. The court of appeals reached a contrary conclusion because "willfully" is "a word of many meanings whose construction is often dependent on the context in which it appears." Pet. App. A17-A18 (quoting *Bryan,* 524 U.S. at 191) (internal quotation marks omitted). The court of appeals correctly noted that in some circumstances, the term means "deliberately and with knowledge." *Ibid.* But that interpretation ordinarily applies only in the context of civil statutes. "It is different in the criminal law," where this Court has "consistently held that a defendant cannot [act willfully] unless he 'acted with knowledge that his conduct was unlawful.' " *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 n.9 (2007) (quoting *Bryan,* 524 U.S. at 193); accord *United States v. Murdock,* 290 U.S. 389, 394 (1933).

In the context of Sections 1001 and 1035, moreover, interpreting "willfully" to mean "deliberately and with knowledge" would deprive that term of independent effect. Both statutes separately require that the defendant act "knowingly," which requires "proof of knowledge of the facts that constitute the offense." *Bryan,* 524 U.S. at 193. It is difficult to conceive of a circumstance in which a defendant could **\*11** "knowingly" make a false statement without also making that statement "deliberately." See 2 Leonard B. Sand et al., *Modern Federal Jury Instructions* 36-18 (2013) (Sand) (rejecting the "deliberately" interpretation of "willfully" in Section 1001 because it is "indistinguishable from the definition of knowingly"). And this Court has cautioned against interpreting a criminal statute in a way that would "treat [] [a] 'willfulness' requirement essentially as surplusage." *Ratzlaf,* 510 U.S. at 140. The need to give the term "willfully" some independent effect thus further confirms that, in the context of Sections 1001 and 1035, it should be interpreted to require proof that the defendant knew his conduct was unlawful. But it remains true that "willfully" is "a word of many meanings." *Bryan,* 524 U.S. at 191. Context and history may support a different interpretation of that term in other criminal statutes not at issue here.[8]

---

[8]   For example, this Court held that a statute making it a crime to "willfully and knowingly" use a passport obtained by means of a false statement required only proof that the passport was used "deliberately and with knowledge" that it had been obtained under false pretenses. *Browder v. United States,* 312 U.S. 335, 341 (1941). The Court noted that the statute was focused primarily on "the basic wrong" of "the securing of a passport by a false statement," and appeared to conclude that this initial act of wrongdoing was sufficient to render any subsequent use of that passport "willful." *Ibid.* And in some other contexts, lower courts have interpreted "willfully" to require only proof that the defendant "knew that her conduct was *wrongful*" rather than proof that she "knew her conduct was *unlawful*." *United States v. Robertson,* 709 F.3d 741, 745 (8th Cir. 2013) (brackets omitted) (interpreting 18 U.S.C. 1163's prohibition on "willfully misappl[ying]" tribal funds).

**\*12** 2. Petitioner contends (Pet. 10-17) that the courts of appeals are divided over the proper interpretation of "willfully" in Section 1035. No square conflict exists on that question, but the courts of appeals have reached differing conclusions about the meaning of "willfully" in Section 1001.

a. Aside from the decision below, only one court of appeals has squarely considered the question whether Section 1035's "willfully" element requires proof that the defendant knew that his false statement was unlawful. In *United States v. Ajoku,* 718 F.3d 882 (9th Cir.), petition for cert, pending, No. 13-7264 (filed Nov. 5, 2.013), the Ninth Circuit concluded that Section 1035 merely requires proof that the charged statements "were made deliberately and with knowledge that the statements were untrue." *Id.* at 890. In this case, the court of appeals followed *Ajoku* and expressly adopted its reasoning. Pet. App. A15-A18.

Petitioner contends (Pet. 11-16) that the decision below conflicts with decisions by the Fifth, Seventh, Eighth, and Ninth Circuits. But that contention rests on petitioner's assertion (Pet. 9-10) that the court of appeals converted Section 1035 into a "[s]trict liability" offense under which "[a]ll the jury needed to find was that [petitioner] made a **\*13** false statement." This characterization is incorrect. The court of appeals held that Section 1035 requires proof not only "that the defendant's statements were false," but also "that the defendant knew they were false." Pet. App. A18. The district court further instructed the jury that it had to find that petitioner made the charged false statements "voluntarily and intentionally." *Id.* at A14. A strict liability offense, in contrast, is one that does not require proof that the defendant was aware of the facts that made his conduct criminal. Cf. *United States v. Bailey,* 444 U.S. 394, 403-404 & n.4 (1980).

Petitioner does not identify any decision holding that Section 1035's "willfully" element requires proof that the defendant knew not only that his statement was false, but also that his conduct was unlawful. The Fifth Circuit appeared to assume that knowledge of illegality is required in *United States v. Delgado,* 668 F.3d 219, 225-226 (2012), *United States v. Crow,* 504 Fed. Appx. 285, 287 (2012), cert, denied, 133 S. Ct. 2014 (2013), and *United States v. Jones,* 664 F.3d 966, 981 (2011), cert, denied, 132 S. Ct. 2728 (2012). But none of those cases squarely presented the question, and the Fifth Circuit's opinions did not address the issue in any detail. In *Jones*, for example, the court held only that a new trial was required where the verdict form instructed the jury that it could convict if it found that the defendant "knew, or should have known" that the **\*14** charged statements were false. 664 F.3d at 981. The court appeared to assume that the *Bryan* definition of "willfully" applies in the context of Section 1035. See *ibid.* (citing *Bryan,* 524 U.S. at 191-192, and referring to the dispute at trial over whether the defendant "had the requisite knowledge that his [conduct] was illegal"). But the court had no occasion to resolve the meaning of "willfully" or to analyze the question presented here because the verdict form required the jury to find only that the defendant "knew, or should have known" that the charged statements were false - a standard that is inadequate under any interpretation of "knowingly and willfully." *Ibid.* Petitioner's claim that the decision below conflicts with decisions by the Seventh, Eighth, and Ninth Circuits also lacks merit. [9]

---

[9] Petitioner relies (Pet. 12-15) on *United States v. Natale,* 719 F.3d 719, 742-743 (7th Cir. 2013), petition for cert, pending, No. 13-744 (filed Dec. 20, 2013), *United States v. Hayes,* 574 F.3d 460, 476-478 (8th Cir. 2009), *United States v. Awad,* 551 F.3d 930, 939-940 (9th Cir.), cert, denied, 556 U.S. 1269 (2009), and the Ninth Circuit's decision in *Ajoku,* 718 F.3d at 889-890. But the relevant portions of *Natale* and *Hayes* simply concluded that Section 1035 requires proof that the defendant knew the statements at issue were false. *Natale,* 719 F.3d at 743; *Hayes,* 574 F.3d at 476-478. *Ajoku* is also entirely consistent with the decision below; indeed, the court of appeals expressly adopted the interpretation of Section 1035 set forth in that case. Pet. App. A15-A18. And although *Awad* interpreted "willfully" to require proof of knowledge of illegality, that case is distinguishable because it did not involve Section 1035. See 551 F.3d at 938-940 (interpreting "willfully" in the context of 18 U.S.C. 1347's prohibition on health care fraud).

**\*15** b. Although no square conflict exists on the meaning of "willfully" in the context of Section 1035, the courts of appeals are divided on the meaning of the term in Section 1001. Six circuits - the First, Fourth, Fifth, Eighth, Ninth, and Tenth - have held that the government need only prove that the defendant deliberately made the statement with knowledge that it was false. See *United States v. Gonsalves,* 435 F.3d 64, 72 (1st Cir. 2006); *United States v. Daughtry,* 48 F.3d 829, 831-832 (4th Cir.), vacated on other grounds, 516 U.S. 984 (1995), reinstated in relevant part, 91 F.3d 675 (1996); *United States v. Hopkins,* 916

F.2d 207, 214 (5th Cir. 1990); *United States v. Hildebrandt,* 961 F.2d 116, 118-119 (8th Cir.), cert, denied, 506 U.S. 878 (1992); *United States v. Tatoyan,* 474 F.3d 1174, 1182 (9th Cir. 2007); *Walker v. United States,* 192 F.2d 47, 49 (10th Cir. 1951). [10]

[10] The D.C. Circuit has assumed that no proof of knowledge of illegality is required, but has not squarely addressed the issue. See *United States v. Hsia,* 176 F.3d 517, 522 n.3 (1999), cert, denied, 528 U.S. 1136 (2000).

The Third Circuit, in contrast, has held that the "willfully" element in Section 1001 requires proof that the defendant had "knowledge of the general unlawfulness of the conduct at issue," *United States v. Starnes,* 583 F.3d 196, 211212 (2009), and the Second Circuit seems to have adopted the same view, see **\*16** *United States v. Bakhtiari,* 913 F.2d 1053, 1060 n.1 (1990) (citing approvingly Judge Sand's "bad purpose" instruction), cert, denied, 499 U.S. 924 (1991); see also *United States v. Whab,* 355 F.3d 155, 160 (2d Cir.) (finding no plain error in the district court's failure to require more specific knowledge of illegality than that the defendant was aware of "the generally unlawful nature of his actions"), cert, denied, 541 U.S. 1004 (200-4). Judge Kavanaugh has likewise concluded that the government must present "proof that the defendant knew that making the false statement would be a crime." *United States v. Moore,* 612 F.3d 698, 703 (D.C. Cir. 2010) (Kavanaugh, J., concurring); see also Sand 36-18 (endorsing the same interpretation of Section 1001). [11]

[11] The Seventh Circuit has noted that its pattern jury instructions require proof of knowledge of illegality, see *United States v. Ranum,* 96 F.3d 1020, 1028-1029 (7th Cir. 1996), cert, denied, 519 U.S. 1094 (1997), but has recognized that the issue remains an open question, see *United States v. Brandt,* 546 F.3d 912, 916 (7th Cir. 2008).

3. In light of the disagreement among the courts of appeals, this Court's review of the proper interpretation of "willfully" in Sections 1001 and 1035 may ultimately be warranted in an appropriate case. But plenary review would be premature at this point because no court of appeals has had an opportunity to consider the question in light of the government's current views. Some or all of the courts that have interpreted "knowingly and willfully" to mean "deliberately and **\*17** with knowledge" may reconsider that conclusion in light of the government's concession that a greater showing is required -particularly because it appears that some of those courts have not considered the issue since this Court's decision in *Bryan*.

4. In some cases in which the government no longer endorsed a view that prevailed in the courts below, this Court has granted the petition, vacated the judgment below, and remanded for further consideration in light of the government's changed position. See, *e.g., Breland v. United States,* 132 S. Ct. 1096 (2012). But such a remand is not necessary in this case because any error in the district court's instructions was harmless.

It is well settled that an error in the jury instructions describing the elements of an offense can be harmless. See *Neder v. United States,* 527 U.S. 1, 8-15 (1999). Such an instructional error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* at 18. That standard is clearly satisfied in this case. Petitioner's convictions are based on false statements he made in his renewal applications for insurance subsidies and the accompanying certifications that the information in those applications was truthful. Pet. App. A7. Those certifications provided:

> I understand the questions on this form. All statements and answers I have given are true and **\*18** complete.
> \*\*\* I understand it's a crime to knowingly provide false, incomplete, or misleading information on this form and that I could be charged with perjury.

*Id.* at A5; see *id.* at A4, A6. Because "the certifications themselves stated that [false] submissions were unlawful," petitioner necessarily "knew that he was committing an unlawful act that exposed him to criminal liability." *United States v. Awad,* 551 F.3d 930, 940 (9th Cir.), cert, denied, 556 U.S. 1269 (2009). As the Ninth Circuit recognized in an analogous case, the omission of an instruction requiring the jury to find that petitioner knew his conduct was unlawful was thus harmless: in light of petitioner's own certifications, a rational jury necessarily would have found that he had the requisite knowledge. See *ibid.* (holding that an erroneous instruction on the meaning of "willfully" in the context of 18 U.S.C. 1347's prohibition on health care

fraud was harmless because the defendant had signed forms stating that the submission of " 'any false, incomplete, or misleading information' could subject him to criminal liability"); see also *United States v. Berry,* 683 F.3d 1015, 1021 (9th Cir. 2012) (finding an improper instruction on "willfully" to be harmless error where the defendant "was notified" of his legal obligations).

Even setting aside the certifications, moreover, the jury found that petitioner made false statements about his employment and income to a government agency in order to obtain insurance **\*19** subsidies available only to low-income residents. Pet. App. A4-A6. The evidence also established that he took steps to conceal his employment by, for example, accepting his salary in cash instead of the checks used to pay his employer's other workers. *Id.* at A9-A10. Even if petitioner had not been expressly advised that it was against the law to make false statements about his employment and income, "no reasonable person" in petitioner's position could have thought that his conduct was lawful. *Awad,* 551 F.3d at 941. Accordingly, the district court's failure to instruct the jury that it had to find that petitioner knew that his actions were unlawful was harmless error.

## CONCLUSION

The petition for a writ of certiorari should be denied.

---

**End of Document**  © 2014 Thomson Reuters. No claim to original U.S. Government Works.