UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.    CRIMINAL NO. 2:14-00114

**RONALD BARNETTE**

<u>**Defendant's Sentencing Memorandum**</u>

Defendant Ronald ("Ronnie") Barnette, by counsel, submits this memorandum in advance of his sentencing hearing, which is currently set for February 25, 2015. In light of Mr. Barnette's early and full cooperation, the nature and circumstances of his offense, and the sentences imposed on similarly situated defendants, Mr. Barnette respectfully suggests that a sentence of probation is appropriate in this case and fully consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).

**Background**

Ronnie Barnette has been an anchor for his small community of Holden, West Virginia, for as long as anyone can remember. He started working as a mechanic at Mining Repair Specialists, Inc. ("MRS") in 1978. In 1987, Ronnie was able to purchase MRS from its prior owner. He and his wife Diana then proceeded to grow the business — with their own hard work and the help of their dedicated family of employees — into one of the most successful rebuild shops in the coal fields. As with any small business owner, MRS was Ronnie's life, and its thirty employees his family. Despite not having graduated high school, Ronnie's hard work allowed him to build a large, robust machine shop in Holden, complete with state-of-the-art equipment and dedicated, life-long employees. In 1999, Ronnie gave up alcohol and focused instead on his

work, his faith, and his family. His business grew, and Ronnie was able to give his thirty employees a reliable paycheck and solid benefits. He also shared his success with his community, generously donating his time and money to his church, to the school, and to community activities.[1]

Eventually, Ronnie was lucky enough to have one primary, solid customer: Arch Coal's Mountain Laurel complex in Logan County. During the time that Mountain Laurel was one of the most productive and profitable mines in the company, MRS did significant "inby" work for Arch, *i.e.*, rebuild work on the equipment used directly at the coal face, such as continuous miner machines, that is critical to continued coal production. In addition, MRS delivered extraordinary value to Arch, performing high-quality and timely work for Arch, while doing so at reasonable rates in the local community. In 2008 — before any "kickback" payments had been demanded or made — MRS performed over $1.1 million of work for Mountain Laurel.

In 2009, however, David Runyon — the general manager of Mountain Laurel and a powerful executive within Arch's corporate structure — approached Ronnie and demanded that he pay "kickbacks" in order to maintain continued work at Mountain Laurel. In a profound lapse of judgment, Ronnie agreed to pay Runyon. Over the next approximately two years, Ronnie paid Runyon a total of about $300,000 in cash payments. Ronnie made the payments out of his post-tax earnings and did not "structure" the cash withdrawals for the payments. And despite Runyon's urging, Ronnie refused to inflate or fraudulently bill Mountain Laurel for any of the work that he performed. In short, MRS was only paid by Arch for the work that it actually and

---

[1] In connection with the filing of this memorandum, counsel for Mr. Barnette submitted under separate cover fourteen sentencing letters to the Court, the Probation Officer, and counsel for the United States.

honestly performed. And, more importantly, Ronnie bore all the economic weight of the payments to Runyon — they came directly out of his post-tax profits from the business.

In late 2010 or early 2011, Ronnie had tired of his efforts to avoid Runyon and his constant demands for payment and decided instead to quit paying Runyon all together.[2] His decision to cease making payments to Runyon was not free of consequences. By 2012, MRS's sales to Mountain Laurel were down by more than $1 million from the prior year. Even Runyon could not completely shut MRS off, however, because the work that it performed for Mountain Laurel was so valuable and critical to coal production at the mine.

**Offense Conduct**

On March 22, 2014, Ronnie was interviewed at home by law enforcement representatives regarding the Mountain Laurel kickback scheme. Ronnie truthfully denied that he was currently paying kickbacks to Runyon. But Ronnie failed to correct the agents' misapprehension that he had not *historically* paid kickbacks to Runyon in connection with Mountain Laurel work, saying instead that he would rather not answer. In attempting to mislead the case agents as to his past payment of kickbacks, Ronnie knew that his conduct was unlawful. As indicated in the Presentence Investigation Report ("PSR"), Ronnie knew he misled the investigators, but he had tried to justify his actions by "not telling the whole story." PSR, ¶ 71.

On March 23, 2014 — the very next day — Mr. Barnette engaged counsel who immediately contacted the Government. And by April 3, 2014 — less than two weeks after the false statement to investigators — Mr. Barnette had informed the Government of his desire to enter into a guilty plea and pay a significant forfeiture amount. On July 15, 2014, Ronnie

---

[2] Although Runyon repeatedly demanded payment in the amount of ten percent of MRS's total work at Mountain Laurel, Ronnie successfully avoided paying Runyon at that level. In 2009 and 2010, for example, MRS did over $6.2 million in work at Mountain Laurel, but Ronnie made only approximately $300,000 in payments to Runyon.

3

entered a guilty plea to a single-court information charging him with making a materially false statement to investigators in violation of 18 U.S.C. § 1001(a)(2).  In connection with his plea agreement, Mr. Barnette paid $400,000 in forfeiture to the United States — approximately $100,000 more than Mr. Barnette's estimated "kickback" payments to Runyon of $300,000.

In the final PSR, the Probation Officer calculated a total offense level of 15 (after a three-level reduction for acceptance of responsibility) and a criminal history category of I, resulting in an advisory Guideline range of 18 to 24 months.  There are no remaining objections to the PSR.  For the reasons set forth below, however, Defendant respectfully suggests that a downward variance and a sentence of probation is appropriate in this case.

## Sentencing Factors

o  *Significant Acceptance of Responsibility*.  Mr. Barnette's acceptance of his guilt and his cooperation in this investigation was nearly instantaneous.  He promptly engaged counsel, admitted to his full involvement in the Mountain Laurel scheme, and provided active cooperation to the Government.  That cooperation was extremely valuable vis-à-vis Runyon, as Mr. Barnette provided the Government with contemporaneous business records evidencing the precise amount, date, time, and location of his "kickback" payments to Runyon.

o  *Unwarranted Sentencing Disparities.*  The Court is familiar with the advisory Guideline ranges and sentences of probation that have been imposed for other similarly situated Mountain Laurel contractors who acquiesced to Runyon's demands for payment.  Two facts about Mr. Barnette bear special emphasis, however:  (1) he was never "inside" at Arch, and thus never played the role of demanding payments from vendors, and (2) he did not commit any tax or structuring offenses in connection with his payments to Runyon.

- o *Just Punishment for the Offense and Adequate Deterrence.* Mr. Barnette has suffered mightily for his extraordinary lapse in judgment in this case. In addition to facing the prospect of a felony conviction, Mr. Barnette has suffered staggering financial consequences. He paid $400,000 in forfeiture, representing $100,000 more than he had already paid Runyon out of his own pocket. Then, in May 2014, MRS was fired from all further work with Arch and banned from the Mountain Laurel complex. Given that Arch represented nearly all of MRS's business, Mr. Barnette had no choice but to lay off nearly all of his employees and put the business up for sale. Mr. Barnette's actions in this case caused him to lose what he refers to as his "baby" — the business that he and his wife struggled every day over the last twenty-five years to build. There is no greater need for deterrence than that. The message from Mr. Barnette's case is clear: business owners who are swayed to participate in the culture of corruption in southern West Virginia stand to lose everything that their hard work has earned them. In short, Mr. Barnette has paid dearly for his profound error in judgment in this case, and a sentence of probation would be a fair, just, and appropriate sentence for his offense.

**Conclusion**

Mr. Barnette respectfully suggests that, after consideration of the factors enumerated in 18 U.S.C. § 3553(a), and consideration of any motion for substantial assistance made by the United States, this Court is justified in substantially departing and varying from the advisory Sentencing Guideline range to a sentence that would permit a term of probation to be imposed. The Defendant does not anticipate presenting any live testimony at sentencing, unless necessary to rebut any such testimony presented by the Government. The Defendant believes that the sentencing hearing in this matter will consume approximately one half hour.

Respectfully submitted,

RONALD BARNETTE,
By Counsel.

/s/Michael B. Hissam
Michael B. Hissam (WVSB #11526)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
mhissam@baileyglasser.com

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

**v.**                                              **CRIMINAL NO. 2:14-00114**

**RONALD BARNETTE**

### CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2015, I filed the foregoing **Defendant's Sentencing Memorandum** using the Court's CM/ECF system, which will cause a copy to be served upon the following:

> Meredith George Thomas, Esq.
> Assistant United States Attorney
> Robert C. Byrd Courthouse
> 300 Virginia Street East, Suite 4000
> Charleston WV 25301

                                     /s/Michael B. Hissam
                                     Michael B. Hissam (WVSB #11526)